IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

|  |  |  |
|---|---|---|
| | * | |
| **DON GORDON** | * | |
| **8012 Carlean Court** | * | |
| **Pasadena, Maryland 21122** | * | |
| | * | |
| | * | |
| **TERRELL JONES** | * | |
| **1029 Lenton Avenue** | * | |
| **Baltimore, Maryland 21212** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **MARYLAND STATE POLICE** | * | |
| **1201 Reisterstown Road** | * | |
| **Pikesville, Maryland 21208** | * | |
| | * | **CASE NO.: 1:22-cv-01699-GLR** |
| **Serve on:** | * | |
| | * | |
| **Colonel Woodrow W. Jones III** | * | |
| **Secretary/Superintendent** | * | |
| **Maryland State Police** | * | |
| **1201 Reisterstown Road** | * | |
| **Pikesville, Maryland 21208** | * | |
| | * | |
| **CORPORAL JASON OROS,** | * | |
| **Individually and in his capacity as a** | * | |
| **Maryland State Trooper with the** | * | |
| **Maryland State Police** | * | |
| **1201 Reisterstown Road** | * | |
| **Pikesville, Maryland 21208** | * | |
| | * | |
| **SERGEANT WILLIAM C. HEATH** | * | |
| **Individually and in his capacity as a** | * | |
| **Maryland State Trooper with the** | * | |
| **Maryland State Police** | * | |
| **1201 Reisterstown Road** | * | |
| **Pikesville, Maryland 21208** | * | |
| | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

## AMENDED COMPLAINT

Plaintiffs, Don Gordon and Terrell Jones (hereinafter referred to as "Plaintiffs"), by and through their attorneys, Joseph E. Spicer, Esquire and Cohen Harris, LLC, hereby file this Complaint against Defendants, Maryland State Police, Corporal Jason Oros, Individually and in his capacity as a Maryland State Trooper with the Maryland State Police, and Sergeant William C. Heath, Individually and in his capacity as a Maryland State Trooper with the Maryland State Police (hereinafter referred to as "Defendants"), pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000, et seq. ("Title VII"), and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1981 (Racial Discrimination) and 42 U.S.C. § 1981 (Hostile Work Environment). In support thereof, Plaintiffs hereby allege the following:

## NATURE OF THE ACTION

1. Plaintiffs bring this action to redress racial discrimination and hostile work environment that they experienced during their time working with the Maryland State Police.

2. Plaintiffs worked for the Maryland State Police as members of the Organized Crime Drug Enforcement Task Force-Baltimore Strike Force Group 7 (hereinafter referred to as "Task Force").

3. Plaintiffs were classified as "Task Force" officers with the Task Force.

4. While working for the Maryland State Police's Task Force, Plaintiffs experienced racial discrimination and a hostile work environment.

## PARTIES

5. At all times relevant to this Complaint, Plaintiff Don Gordon was a citizen of the State of Maryland and a resident of Anne Arundel County, Maryland.

6. At all times relevant to this Complaint, Plaintiff Gordon was employed by the Maryland Department of Public Safety and Correctional Services which assigned him to the Task Force as a Task Force officer.

7. At all times relevant to this Complaint, Plaintiff Terrell Jones was a citizen of the State of Maryland and a resident of Baltimore City, Maryland.

8. At all times relevant to this Complaint, Plaintiff Jones was employed by the Baltimore City Sheriff's Office which assigned him to the Task Force as a Task Force officer.

9. At all times relevant to this Complaint, Plaintiffs were jointly employed by the Maryland State Police.

10. At all times relevant to this Complaint, Defendant the Maryland State Police was a department of state government and the statewide law enforcement agency for the State of Maryland with more than one thousand employees.

11. The Maryland State Police is involved in criminal and traffic enforcement efforts in every Maryland county, works in partnership with local, state, and federal law enforcement and emergency services agencies, and is part of a coordinated network of state resources working to protect Maryland's citizens.

12. At all times relevant to this Complaint, Sergeant William C. Heath was employed by the Maryland State Police as a Maryland State Trooper assigned to the Task Force.

13. At all times relevant to this Complaint, Sergeant Heath was the Task Force's supervisor.

14. At all times relevant to this Complaint, Corporal Jason Oros was employed by the Maryland State Police as Maryland State Trooper assigned to the Task Force.

15. Corporal Oros was the Task Force's assistant supervisor.

16. At all times relevant to the Complaint, Defendant Oros and Defendant Heath were employed by the Maryland State Police and were working within the scope of their employment.

17. In this cause of action, Defendant Oros and Defendant Heath are each being sued as an Individual and in their capacity as Maryland State Troopers with the Maryland State Police.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to Title VII, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, which are federal statutes. Personal jurisdiction is proper because the Maryland State Police is located in the State of Maryland.

19. Venue is proper under 28 U.S.C. §1391(b)(1) and 1391(b)(2) because the Maryland State Police's principal place of business is located within this judicial district and because a substantial part of the events giving rise to this complaint occurred in this judicial district.

20. Venue is also proper in this district because many of the unlawful practices described herein occurred in this district.

21. Furthermore, venue is also proper because Plaintiffs also reside in this district.

22. This Court in accordance with 28 U.S.C. §§1331 has jurisdiction over Plaintiffs' claims because this civil action arises under the laws of the United States.

## CONDITIONS PRECEDENT TO FILING SUIT

23. Plaintiffs have satisfied and exhausted all administrative and procedural prerequisites and conditions precedent to instituting this action.

24. In particular, Plaintiffs have fulfilled the prerequisite to filing suit under Title VII by timely filing a charge of discrimination with the Equal Employment Opportunity Commission

(the "EEOC") on or about November 30th, 2020 and by obtaining a Right-to-Sue Letter from the EEOC on or about April 13th, 2022.

## FACTUAL BACKGROUND

25. Plaintiffs, Don Gordon and Terrell Jones are African-Americans.

26. Plaintiff Gordon is an experienced law enforcement officer who has over thirty (30) years of law enforcement experience.

27. Plaintiff Gordon has been employed as a Baltimore City police officer and is currently employed by the Maryland Department of Public Safety and Correctional Services.

28. Plaintiff Jones is also an experienced law enforcement officer who was employed as a deputy by the Baltimore City Sheriff's Office for approximately fourteen (14) years.

29. In October 2019, Plaintiff Gordon was assigned by the Maryland Department of Public Safety and Correctional Services to the Task Force as a Task Force officer.

30. In April 2019, Plaintiff Jones was assigned by the Baltimore City Sheriff's Office to the Task Force as a Task Force officer.

31. Defendant Maryland State Police could have chosen not to accept Plaintiffs into the Task Force, but instead chose to accept them as Task Force members.

32. Plaintiffs' supervisors with the Task Force were Defendant Heath and Defendant Oros.

33. Defendant Heath and Defendant Oros provided day-to-day supervision to Plaintiffs.

34. The Task Force was comprised of law enforcement officers from various local, state, and federal law enforcement agencies.

35. The Task Force were composed of law enforcement officers who were Maryland State Troopers and others who were classified as Task Force officers.

36. Plaintiffs were provided training by Defendant Maryland State Police.

37. Plaintiffs were given pawn shop training and computer training by Defendant Maryland State Police.

38. Plaintiffs were given training in drug investigations while working for the Task Force.

39. Plaintiffs were also given Maryland State Police equipment to do their jobs as Task Force members.

40. As Task Force members, Plaintiffs were given equipment to perform their duties with the Task Force by Defendant Maryland State Police which included radios, laptops, key fobs, door rams, and access to the Maryland State Police databases.

41. As Task Force members, Defendants had control over Plaintiffs during their time working with the Task Force.

42. Defendant Heath and Defendant Oros made Plaintiffs' work schedule, which included the work shifts Plaintiffs were to work, where they were to supposed to work, when they were supposed to work, how long they were supposed to work, and the type of work they were to be doing.

43. If Plaintiffs were not properly or satisfactorily performing their job duties and responsibilities, Defendants had the authority to remove Plaintiffs from the Task Force.

44. However, as members of the Task Force, Plaintiffs experienced disparate treatment due to their race.

45. Within the first few months of their assignment to the Task Force, Plaintiffs began to experience disparate treatment within the Task Force.

46. At that time, Plaintiffs began to notice that white Task Force members who had the same job title as Plaintiffs and the same or similar job duties received more favorable treatment.

47. As members of the Task Force, Plaintiffs were excluded from informal meetings held by Defendant Heath and Defendant Oros that white Task Force members were permitted to attend.

48. Plaintiffs were not invited or included in these informal meetings.

49. Plaintiffs also were not included in group text messages regarding the Task Force's operations that included white Task Force members.

50. Defendant Oros and Defendant Heath rarely communicated with Plaintiffs.

51. Plaintiffs were denied desirable job assignment opportunities and overtime work that white Task Force members received.

52. Consequently, Plaintiffs were denied overtime opportunities which resulted in a loss of income that white Task Force members were given.

53. Plaintiffs also were not included in routine group work text message communications with Defendant Heath and Defendant Oros.

54. Defendant Heath and Defendant Oros had a separate group work text message threads that did not include Plaintiffs.

55. This non-inclusive group work text message thread included white Task Force members but did not include Plaintiffs.

56. Often there were text messages that Defendant Heath and Defendant Oros sent to white Task Force members that included information about new and ongoing drug investigations, job assignment opportunities, and opportunities for overtime work which did not include Plaintiffs.

57. Plaintiffs were not advised of these job opportunities and were not afforded the chance to take advantage of them because they were not included in the group text messages and informal meetings that included white Task Force members.

58. Plaintiffs often did not find out about these jobs and other opportunities until they were no longer available.

59. Plaintiffs found out about the job assignments, job opportunities, and additional work when they heard other Task Force members talking about them.

60. Defendant Heath and Defendant Oros knew that Plaintiffs were being left out of these text messages.

61. Plaintiffs discovered that Defendant Oros and Defendant Heath participated in such text message threads which excluded them.

62. The white members of the Task Force, including those classified as Task Force officers, were included in the Defendants' informal meeting and text message threads.

63. The white Task Force officers also received job opportunities and more overtime opportunities than Plaintiffs because they were present for the informal meetings and were included in the text message threads that did not include Plaintiffs.

64. Moreover, the Task Force was also negatively impacted by Defendant Oros' actions during Plaintiffs' assignment with the Task Force.

65. Plaintiffs were treated differently than the white Task Force members because of their race.

66. On or about June 2, 2020, Corporal Oros sent a racially offensive text message to Plaintiffs and other members of the Task Force.

67. Corporal Oros' text message depicted a superimposed nude African-American male with exposed and enlarged genitals sitting on George Floyd's head and neck area on the street near the rear bumper of a Minneapolis police car.

68. Defendant Oros' actions and Defendant Heath's handling of the incident resulted in more racial division within the Task Force.

69. Defendant Heath failed to properly supervise and discipline Defendant Oros for his racist and offensive conduct.

70. Defendant Heath failed to report Defendant Oros' conduct through proper Maryland State Police supervisory channels.

71. Plaintiffs found Defendant Oros' and Defendant Heath's behavior to be indicative of the kind of treatment they received during their time with the Task Force.

72. Defendant Heath did not start an investigation into Defendant Oros' racist and offensive behavior.

73. Plaintiffs were upset and offended by the actions of Defendant Oros and the inaction of Defendant Heath.

74. The Maryland State Police, Defendant Oros, and Defendant Heath, by and through their conduct, created an environment that resulted in Plaintiffs' disparate treatment based on their race and thereby also created a hostile work environment.

75. Defendants' behavior created a tense atmosphere where Plaintiffs did not want to come to work, that created mistrust along racial lines within the Task Force, and caused Plaintiffs to feel isolated from other Task Force members.

76. Plaintiffs believed that they could not trust the white Task Force members due to the tension and mistrust caused by Defendants' behavior and conduct.

77. Plaintiffs did not believe that Defendants and other Task Force members would protect them while they were on the street conducting drug investigations, executing search and seizure warrants, and performing their daily duties due to the atmosphere caused by Defendants' conduct.

78. Defendants' actions caused Plaintiffs to lose opportunities at job assignments, overtime hours, and compensation afforded white members of the Task Force including Task Force officers who held the same position as Plaintiffs.

79. Plaintiffs' disparate treatment and losses were caused by Maryland State Police, specifically, Defendant Heath and Defendant Oros who, as Plaintiffs' supervisors, excluded them from meetings and text message threads which white Task Force members discussed and were assigned the most desirable job assignments and overtime opportunities.

80. The Maryland State Police, Defendant Heath, and Defendant Oros permitted and condoned Plaintiffs' exclusion from the informal meetings and text message threads while the white members of the Task Force and white Task Force officers were included.

81. The white members of the Task Force and white Task Force officers attended the informal meetings and financially benefitted from their attendance at those meetings.

82. The white Task Force members and white Task Force officers were included in the text messages that discussed new investigations, new investigation assignments, and new opportunities as a result financially benefitted from receiving these group text messages.

83. Furthermore, Defendant Oros' text message and Defendant Heath's failure to take action against Defendant Oros' racist and offensive conduct created an even greater racial division within the Task Force.

84. Plaintiffs were offended, felt uncomfortable, and felt intimidated by Defendant Oros' and Defendant Heath's actions.

85. The Maryland State Police's, Defendant Oros', and Defendant Heath's words and conduct hindered Plaintiffs' work performance and their ability to do their jobs.

86. Plaintiffs were adversely affected by Defendants' acts and omissions.

87. Plaintiffs would not have been subjected to the racist and offensive behavior and less favorable treatment but for their race.

88. But for their race, Plaintiffs would not have been given less opportunities for more and better job assignments and less overtime opportunities than the white Task Force officers.

89. Nevertheless, Plaintiffs' work was satisfactory in that Plaintiff Gordon was considered a valued member of the task force team and Plaintiff Jones received a Commander's Award Certificate for his contributions to the Task Force.

90. Plaintiff Jones experienced racial discrimination and a hostile work environment with the Task Force until he left the unit in July 2020.

91. Plaintiff Gordon experienced racial discrimination and a hostile work environment with the Task Force until the beginning of January 2022.

92. Plaintiff Gordon is still a member of the Task Force.

93. Defendant Oros and Defendant Heath are no longer members of the Task Force.

94. There has been no legitimate, non-discriminatory reason for the Defendants' discriminatory conduct.

95. The white Task Force members were not subjected to the discriminatory actions and treatment that Plaintiffs were subjected to during their time with the Task Force.

**COUNT ONE--- RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000, et seq.,**

96. Plaintiffs incorporate the allegations contained in paragraphs 1 through 95 as though fully set forth herein.

97. Defendants have discriminated against Plaintiffs by treating them differently and less favorably than similarly situated white Task Force members and Task Force officers, and by subjecting them to racial discrimination and disparate treatment in violation of Title VII.

98. Defendants' racially discriminatory practices and/or procedures produced disparate impact upon Plaintiffs with respect to the terms and conditions of their job performance and job opportunities.

99. Plaintiffs were treated differently and received less favorable treatment from their supervisors, Defendant Oros and Defendant Heath, than the white Task Force members and Task Force officers.

100. Defendants' disparate treatment of Plaintiffs was done intentionally and purposefully.

101. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered economic harm, including loss of compensation, wages, back pay, and other employment benefits, as well as emotional harm, anguish, and humiliation.

102. Because of the racial discrimination Plaintiffs experienced from the Maryland State Police, Defendant Heath, and Defendant Oros, Plaintiffs are requesting and are entitled to all legal and equitable remedies available under Title VII.

### COUNT TWO--- RACE DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND 42 U.S.C. § 1983

103. Plaintiffs incorporate the allegations contained in paragraphs 1 through 102 as though fully set forth herein.

104. Defendants' actions as described herein were committed under color and pretense of law and under color of statutes, customs, and usages of the State of Maryland.

105. Defendants' racially discriminatory policies, practices and/or procedures have deprived Plaintiffs of their rights, privileges and immunities guaranteed to them under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

106. Plaintiffs were treated differently by Defendants and received less favorable treatment than the white Task Force members.

107. Defendants' disparate treatment of Plaintiffs in comparison to the favorable treatment of the white Task Force members was intentional and purposeful.

## COUNT THREE--- HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000, et seq.

108. Plaintiffs incorporate the allegations contained in paragraphs 1 through 107 as though fully set forth herein.

109. Defendant Oros' and Defendant Heath's conduct divided Task Force members among racial lines.

110. Plaintiffs were treated differently than white members of the Task Force and the white Task Force officers.

111. Defendants Oros' conduct in sending a racist and offensive text worsened the Task Force's environment.

112. Defendants created a hostile work environment due to their willingness to exclude Plaintiffs from Defendants' informal meetings and group text messages which negatively impacted Plaintiffs that made it difficult for them to effectively perform their work.

113. Defendants are responsible for creating an environment that made it difficult for Plaintiffs to do their work effectively.

114. By creating a hostile work environment within the Task Force, as shown above, Plaintiffs' work was negatively impacted.

115. Defendants' actions in excluding Plaintiffs from the informal meetings and group text messages as well as Defendant Oros' sending of the racist text message was unwelcome and offensive to Plaintiff.

116. Defendants treated Plaintiffs differently because of their race.

117. Defendants' actions and behavior changed and/or altered Plaintiffs' duties and created an abusive environment was pervasive and permeated throughout the entire Task Force.

118. Due to Defendants' conduct, Plaintiffs' job duties on the Task Force changed because they were left out of investigations and because they were not afforded the opportunities to work on investigations and projects provided to white Task Force members.

119. The offensive and unwelcome conduct changed and/or altered Plaintiffs' conditions of employment and the created an abusive environment within the Task Force that were attributable to the Defendants.

120. Defendants' actions, as described above, caused Plaintiffs to experience financial losses and emotional harm.

### COUNT FOUR--42 U.S.C. § 1981 (Racial Discrimination)

121. Plaintiffs incorporate the allegations contained in paragraphs 1 through 120 as though fully set forth herein.

122. Plaintiffs are African-Americans who are members of a protected class under 42 U.S.C. § 1981.

123.   Plaintiffs were discriminated against by the Defendants while they were working for the Maryland State Police.

124.  Plaintiffs received disparate treatment from Defendants during their employment with the Maryland State Police because of their race.

125.  Plaintiffs were performing their duties at a level that met the expectations of the Maryland State Police when they were subjected to the disparate treatment.

126. But for Plaintiffs' race, Plaintiffs would not have been subjected to the disparate treatment that they received from the Defendants during their employment with the Maryland State Police.

127.  Defendants have not provided any legal or lawful reason why Plaintiffs were treated differently than the white Task Force members.

128.  As a result of the Defendants' discriminatory practices, Plaintiffs have suffered and will continue to suffer harm including, but not limited to emotional harm, mental anguish, and lost wages.

### COUNT FIVE--42 U.S.C. § 1981 (HOSTILE WORK ENVIRONMENT)

129.  Plaintiffs incorporate the allegations contained in paragraphs 1 through 128 as though fully set forth herein.

130.  Plaintiffs are African-Americans who are members of a protected class under 42 U.S.C. § 1981.

131.  Plaintiffs were discriminated against by the Defendants while they were working for the Maryland State Police.

132.  Plaintiffs received unwelcomed and disparate treatment because of their race from Defendants during their employment with the Maryland State Police.

133. But for Plaintiffs' race, Plaintiffs would not have been subjected to the disparate treatment that they received from the Defendants during their employment with the Maryland State Police.

134. Due to Defendants' conduct created a hostile and an abusive work environment based upon race that permeated the Task Force and caused division and mistrust among racial lines.

135. Defendants have not provided any legal or lawful reason why Plaintiffs were treated differently than the white Task Force members.

136. Due to Defendants' conduct, Plaintiffs' job duties on the Task Force changed because they were left out of investigations and because they were not afforded the opportunities to work on investigations and projects provided to white Task Force members.

137. As a result of the Defendants' discriminatory practices, Plaintiffs have suffered and will continue to suffer harm.

138. Defendants' actions caused Plaintiffs to experience financial losses and emotional harm.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that:

A. Determine that the employment practices complained of in this Complaint are unlawful in that they violate Title VII, 42 U.S.C §1983, the Equal Protection Clause of the United States Constitution, 42 U.S.C. § 1981 (Racial Discrimination), and 42 U.S.C. § 1981 (Hostile Work Environment);

B. Defendants pay each Plaintiffs the sum of $300,000 in compensatory damages and $1,000,000.00 in punitive damages.

C.  An award of litigation costs and expenses to Plaintiffs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988(b);

D. Pre-judgment and post-judgment interests;

E. A Declaratory judgment that the Maryland State Police's employment policies, practices and/or procedures challenged herein are illegal and in violation of Title VII;

F. An award of back pay, front pay, lost benefits, emotional harm, and other damages for lost compensation and job benefits suffered by Plaintiffs in an amount to be determined at trial;

G. Any other equitable relief to which Plaintiffs are entitled;

H. Such other and further relief as the Court may deem just and proper; and

I. Grant Plaintiffs such other/further relief to which they are entitled at law or in equity.

Respectfully submitted,


_____/s/_____
Joseph E. Spicer, Esquire #27839
Cohen Harris, LLC
40 York Road, 4th Floor
Towson, Maryland 21204
Telephone No.: (888) 585-7979
Fax No.: (443) 773-0675
E-mail: joseph@cohenharris.com
Attorney for Plaintiffs