IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DON GORDON, et al.,                    *

      Plaintiffs,                        *

v.                                     *          Civil Action No. GLR-22-1699

MARYLAND STATE POLICE, et al.,         *

      Defendants.                        *

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Maryland State Police's ("MSP") Motion to Dismiss Plaintiffs Don Gordon and Terrell Jones' Amended Complaint or, in the Alternative, Motion for Summary Judgment (ECF No. 25), Defendant Sergeant William C. Heath's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 26), and Defendant Corporal Jason Oros' Motion to Dismiss (collectively, "MSP Defendants") (ECF No. 27). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motions in part and deny the Motions in part.

# I.    BACKGROUND[1]

## A.    Gordon and Jones' Work on the MSP Task Force

Plaintiffs Don Gordon and Terrell Jones worked for the Maryland State Police as a part of an Organized Crime Drug Enforcement Task Force called "Baltimore Strike Force Group 7" (the "Task Force"). (Am. Compl. ¶ 2, ECF No. 23). Gordon and Jones were there on assignment—Gordon was employed by the Maryland Department of Public Safety and Correctional Services ("MDPSCS") and Jones was employed by the Baltimore City Sherriff's Office. (Id. ¶¶ 6, 8). Gordon and Jones are African American men, (id. ¶ 25), and they allege that they experienced racial discrimination and a hostile work environment while working on the Task Force, (id. ¶ 4).

Gordon and Jones are both experienced police officers with thirty and fourteen years of service, respectively. (Id. ¶¶ 26, 28). In October 2019, Gordon was assigned by the MDPSCS to the Task Force, and Jones was assigned in April 2019. (Id. ¶¶ 29, 30). Gordon and Jones allege that within a few months of their assignments to the Task Force, they "began to experience disparate treatment." (Id. ¶ 45). Specifically, they claim that Oros and Heath "rarely communicated" with them, they were excluded from "informal meetings" that Heath and Oros held with white Task Force members, they were denied desirable job assignments and overtime work that white Task Force members received, and they were excluded from important work-related text message threads. (Id. ¶¶ 47–56). Gordon and

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 23) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Jones further allege that their exclusion from these text chains and informal meetings left them uninformed about meaningful job opportunities that ultimately went to white Task Force members, and they claim they were treated differently "because of their race." (Id. ¶¶ 63, 65).

In their most detailed allegation, Gordon and Jones claim that on June 2, 2020, Oros sent "a racially offensive text message" to all the members of the Task Force. (Id. ¶ 66). The text included a picture of "a superimposed image of a nude African American man with exposed and enlarged genitals sitting on George Floyd's head and neck area on the street." (Id. ¶ 67). Gordon and Jones "were upset and offended" after Oros sent the text. (Id. ¶ 73). They further claim that Oros was not disciplined and that the incident "resulted in more racial division within the Task Force." (Id. ¶¶ 68, 69). Additionally, they allege that this behavior "created a tense atmosphere" where they no longer wanted to go to work and led them to feel more isolated from other Task Force members. (Id. ¶ 75). Gordon and Jones no longer trusted the white Task Force members due to this tension, and they did not believe that the Task Force would protect them while they were performing their job duties. (Id. ¶ 77).

Jones ultimately left the Task Force in July 2020. (Id. ¶ 90). Gordon is still a member of the Task Force, and he claims he experienced racial discrimination and a hostile work environment until the beginning of January 2022. (Id. ¶ 91). Oros and Heath are no longer on the Task Force, but Plaintiffs do not indicate when or under what circumstances they left. (Id. ¶ 93).

Gordon and Jones allege that Heath and Oros provided "day-to-day supervision" on the Task Force. (Id. ¶¶ 32, 33). Gordon and Jones also claim that MSP trained them about pawn shops, computers, and drug investigations while they worked for the Task Force. (Id. ¶¶ 37, 38). Further, MSP supplied them with equipment including radios, laptops, key fobs, door rams, and access to MSP's databases. (Id. ¶ 40). Heath and Oros made their work schedules while they were on the Task Force, including when and where they were supposed to work. (Id. ¶ 42). Finally, Gordon and Jones allege that "Defendants had the authority to remove Plaintiffs from the Task Force." (Id. ¶ 43).

The Court will supply additional facts as necessary below.

**B.    Procedural History**

Prior to filing suit, Gordon and Jones filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 30, 2020, and they received right-to-sue letters on April 13, 2022. (Id. ¶ 24).[2] On July 8, 2022, Gordon and Jones filed a Complaint in this Court. (ECF No. 1). On January 20, 2023, MSP, Oros, and Heath filed separate Motions to Dismiss the Complaint. (ECF Nos. 19–21, respectively). Gordon and Jones filed an Amended Complaint on February 7, 2023, thereby mooting the pending Motions. (ECF No. 23). In the Amended Complaint, Gordon and Jones allege: (1) race discrimination in violation of Title VII (Count One); (2) race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count Two); (3) hostile work environment in violation of Title VII (Count Three);

---

[2] MSP Defendants do not argue that Gordon and Jones failed to exhaust their administrative remedies.

(4) race discrimination in violation of 42 U.S.C. § 1981 (Count Four); and (5) hostile work environment in violation of 42 U.S.C. § 1981 (Count Five).

On February 21, 2023, MSP filed a Motion to Dismiss Amended Complaint or, in the Alternative, Motion for Summary Judgment. (ECF No. 25). Gordon and Jones filed an Opposition on March 7, 2023, (ECF No. 29), and MSP filed a Reply on March 21, 2023, (ECF No. 31).

Heath also filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on February 21, 2023, (ECF No. 26), which Gordon and Jones opposed on March 7, 2023, (ECF No. 28). Heath filed a Reply on March 21, 2023, (ECF No. 32).

Finally, Oros filed a Motion to Dismiss on February 22, 2023, (ECF No. 27), and Gordon and Jones filed an Opposition on March 8, 2023, (ECF No. 30). To date, Oros has not filed a Reply.

## II.   DISCUSSION

### A.   **Standard of Review**

#### 1.   **Conversion**

MSP and Heath's Motions are styled as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, for Summary Judgment under Federal Rule of Civil Procedure 56.[3] A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462

---

[3] Oros' Motion is styled only as a Motion to Dismiss without requesting conversion. (ECF No. 27).

(4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed.2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for

discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir.

2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir.

1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must

typically file an affidavit or declaration under Rule 56(d), explaining the "specified

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P.

56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement . . . ." Nautilus

Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80

F.3d at 961). However, non-compliance may be excused "if the nonmoving party has

adequately informed the district court that the motion is pre-mature and that more discovery

is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for

discovery "when the relevant facts are exclusively in the control of the opposing party,"

such as "complex factual questions about intent and motive." Id. at 247 (quoting 10B

Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed.1998))

(internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery

for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331,

342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied

when "the additional evidence sought for discovery would not have by itself created a

genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate

of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven

Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Here, Gordon and Jones filed the Declaration of Joseph Spicer, their counsel, under Rule 56(d). (See Decl. Spicer Rule 56(d) ["Spicer Decl."] at 2, ECF No. 28-3). In the Declaration, Spicer indicates that Plaintiffs have not had the opportunity to conduct pretrial discovery and that Plaintiffs are not prepared to adequately respond to a summary judgment motion without it. (Id. ¶¶ 5, 6). Specifically, Spicer avers that Plaintiffs need to depose the MSP Defendants because MSP is in exclusive control of Plaintiffs' employment records and Plaintiffs may possess further information about whether MSP intended to enter into an employment agreement with Plaintiffs. (Id. ¶¶ 10, 12, 15).

MSP responds that Gordon and Jones' requests for discovery are "questionable." (Def. MSP's Reply Pls.' Opp'n Mot. Dismiss Alt. Mot. Summ. J. ["MSP's Reply"] at 4, ECF No. 31). In support, it argues that Gordon and Jones have possession of their paychecks and tax documents, and that "[i]f they truly wanted to create a dispute of fact on this issue, they could have provided some minimal evidence that they are receiving employment related documents from MSP." (Id.). MSP misses the mark by conflating the requirements for a proper Rule 56(d) affidavit with the evidentiary standard to oppose a converted summary judgment motion. Stated another way, Rule 56(d) does not require that the non-moving party produce documents or evidence already in his possession in making his request for additional discovery prior to the summary judgment stage, and MSP offers no support for such a contention.

As Gordon and Jones have not yet had an opportunity to conduct discovery, the Court declines to convert MSP and Heath's Motions to Dismiss into Motions for Summary Judgment.

**B.**    **Analysis**

**1.**    **MSP Defendants' Defenses**

Before the Court can begin substantive analysis of Gordon and Jones' claims, it recognizes that the Amended Complaint presents a "shotgun" style approach and asserts several claims subject to potential defenses under Title VII, § 1983 and § 1981. The Plaintiffs do not specify in their Amended Complaint whether they seek to bring their claims against MSP Defendants in their official or individual capacities, nor do they recognize any immunities MSP Defendants may have under their various statutory claims. Instead, Plaintiffs assert all five Counts against all MSP Defendants, requiring the Court to identify which claims are viable against which parties from the outset.

**a.**    **Joint Employer Doctrine**

Gordon and Jones raise race discrimination and hostile work environment claims under Title VII as to MSP Defendants. (Counts One and Three).[4] First, MSP Defendants argue that Plaintiffs' Title VII claims fail because MSP was not Gordon or Jones' employer within the context of the statute. At bottom, the Court finds that Gordon and Jones have adequately alleged that MSP was their joint employer for the pleading stage.

Under Title VII, an employer may not discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. "An entity need not be a plaintiff's sole employer in order to be liable under Title VII." Rodgers

---

[4] Title VII claims are not subject to protection under the Eleventh Amendment. See Chapman, 2023 WL 5053545, at *6.

v. Eagle Alliance, 586 F.Supp.3d 398, 428 (D.Md. 2022). Under the joint employer

doctrine, an entity may be a joint employer of a plaintiff "if it exercises sufficient control

over the terms and conditions of the plaintiff's employment." Marshall v. Anne Arundel

Cnty., No. ELH-18-74, 2019 WL 568676, at *8 (D.Md. Feb. 12, 2019).

The Fourth Circuit has identified nine factors to help determine whether an entity is

a joint employer, as follows:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including
> employee discipline;
> (3) whether the putative employer furnishes the equipment
> used and the place of work;
> (4) possession of and responsibility over the individual's
> employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked
> for the putative employer;
> (6) whether the putative employer provides the individual with
> formal or informal training;
> (7) whether the individual's duties are akin to a regular
> employee's duties;
> (8) whether the individual is assigned solely to the putative
> employer; and
> (9) whether the individual and putative employer intended to
> enter into an employment relationship.

Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 414 (4th Cir. 2015); see also Smith

v. CSRA, 12 F.4th 396 (4th Cir. 2021) (applying the Butler factors). The factors are "not

dispositive," but control remains the "principal guidepost" in a determination regarding the

doctrine. Rodgers, 586 F.Supp.3d at 428 (quoting Butler, 793 F.3d at 414). As such, the

first three factors are the most important in determining joint employment. Id. The ninth

factor, however, is of "minimal consequence in the joint employment analysis." Id. at 429

(quoting Butler, 793 F.3d at 414 n.12).

As Plaintiffs admit in their Amended Complaint, Gordon was employed by the Maryland Department of Public Safety and Correctional Services and Jones was employed by the Baltimore City Sherriff's Office. (Am. Compl. ¶¶ 6, 8). They claim, however, that their respective agencies "assigned" them to the Task Force and that MSP had control over them. (Id. ¶¶ 6, 8, 41). As such, MSP may be Gordon and Jones' joint employer. According to the Amended Complaint, MSP could have rejected Plaintiffs' assignments to the Task Force; Heath and Oros provided Plaintiffs with "day-to-day supervision;" MSP trained Plaintiffs regarding pawn shops, computers, and drug investigations; MSP gave Plaintiffs equipment such as radios, laptops, key fobs, door rams, and access to MSP databases; Heath and Oros made Plaintiffs' work schedules, including where and when they were supposed to work; Heath and Oros directed Plaintiffs on what tasks to complete; and MSP Defendants generally had the power to remove Plaintiffs from the Task Force. (Id. ¶¶ 31–43). Gordon and Jones' allegations address several significant factors under the joint employer doctrine, including day-to-day control over their schedules and assignments, as well as some role in choosing whether to retain them on the Task Force. In light of these facts, which we accept as true under Rule 12(b)(6), as well as the liberal construction extended to the definition of an "employer" under Title VII, the Court finds that the Amended Complaint creates at least a plausible inference that MSP was the Plaintiffs' joint employer. See Marshall, 2019 WL 568676, at *9 (finding allegations regarding joint employer doctrine plausible at motion to dismiss stage where plaintiff's complaint showed that defendant "played some role in her hiring," "paid her," and "furnished her place of employment"); see also Lee v. Mattis, No. PX-17-2836, 2018 WL 3439261, at *9 (D.Md.

July 17, 2018) (outlining liberal construction of Title VII). Accordingly, the Court will move forward with the crux of its analysis on the basis of the plausibility of Plaintiffs' allegations that MSP was their joint employer.

### b.    Eleventh Amendment Immunity

Next, MSP, Heath, and Oros argue that they are immune from Gordon and Jones' § 1983 and § 1981 claims under the Eleventh Amendment (Count Two in part, Count Four, and Count Five). At bottom, the Court finds that MSP is immune under the Eleventh Amendment from the § 1983 and § 1981 claims, and Heath and Oros may only be liable in their individual capacities.

Under the Eleventh Amendment, "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted this to mean that the "Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Chapman v. Md. Dep't of State Police, Off. of State Fire Marshall, No. ADC-23-442, 2023 WL 5053545, at *3 (D.Md. Aug. 8, 2023) (quoting Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 73 (2000)). "[S]tate sovereign immunity bars suits against instrumentality of a state, sometimes referred to as an 'arm of the state,' including state agencies." Id. (quoting Pevia v. Hogan, 443 F.Supp.3d 612, 630–31 (D.Md. 2020)). Further, "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101–02 (1984).

Accordingly, a plaintiff cannot sue a state or state instrumentality unless one of the following exceptions applies: (1) the State has waived its Eleventh Amendment immunity; (2) Congress has abrogated the States' Eleventh Amendment immunity pursuant to a valid grant of constitutional authority; or (3) the suit seeks prospective injunctive relief against state officials. Id. (quoting Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 248 (4th Cir. 2012)).

The first exception does not apply because the State of Maryland has not waived its immunity regarding § 1981 or § 1983 claims. Id.; see also Bishop v. Lewis, No. WMN-10-3640, 2011 WL 1704755, at *2 (D.Md. May 4, 2011) ("Defendant MSP is correct that Maryland has not waived its immunity as to § 1983 [or] § 1981 . . . claims."). The second exception also does not apply as "Congress did not abrogate the states' sovereign immunity when it enacted § 1981 and § 1983." Chapman, 2023 WL 5053545, at *4 (internal quotation marks omitted). The final exception does not apply because Gordon and Jones do not request injunctive relief. See id.

Accordingly, the Court will dismiss the § 1981 and § 1983 claims as to MSP (Count Two in part, Count Four, and Count Five). It will further dismiss the § 1981 and § 1983 claims as to Heath and Oros in their official capacities. See Does 1-22 v. Bd. of Educ. of Prince George's Cnty., No. TDC-19-2580, 2022 WL 17490552, at *4 (D.Md. Dec. 6, 2022) ("[B]ecause an official capacity suit against a government official 'is no different from a suit against the State itself,' the claims against [] [i]ndividual Defendants in their official capacities are [] not claims against a 'person' under § 1983 . . . ." (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Section 1981 and 1983 claims may proceed

against Heath and Oros in their individual capacities only (Count Two in part, Count Four, and Count Five).

### c.     Individual and Official Capacity Liability under Title VII

Next, Heath and Oros argue that "individual supervisors are not liable under Title VII in their individual or official capacity." (See, e.g., Mem. L. Supp. Def. Heath's Mot. Dismiss Alt. Mot. Summ. J. ["Heath Mot."] at 3, ECF No. 26-2). Heath and Oros are partially correct but oversimplify and misstate the law regarding their official capacities under Title VII. Still, the Court will dismiss the Title VII claims against Heath and Oros.

"[A] person cannot be held liable under Title VII in his or her individual capacity unless the person qualifies as an 'employer' within the meaning of the statute." Hughley v. JetBlue Airways Corp., No. GLR-19-3523, 2020 WL 3451984, at *3 (D.Md. June 24, 2020). Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e-(b). It is true that "supervisors are not liable in their individual capacities for Title VII violations." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 181 (4th Cir. 1998). Nonetheless, Heath and Oros may be liable under Title VII in their official capacities. See Roberts v. Coffey, No. DKC-10-3359, 2012 WL 2000353, at *3 (D.Md. June 4, 2012) (dismissing claims based upon individual capacities under Title VII but indicating that defendant police officers could be sued in their official capacities). Still, this Court has held that suing multiple state actors in their official capacities is "redundant because an official-capacity suit is tantamount to a suit against the state." Id.; see also Will, 491 U.S. at 71. Accordingly, only one Defendant here needs to be named in its official capacity. MSP is

the most logical choice in this case as it is a state agency and meets basic requirements as an employer under the statute.

Therefore, the Court will dismiss the race discrimination and hostile work environment claims under Title VII as to Heath and Oros. Count One, race discrimination under Title VII, and Count Three, hostile work environment under Title VII, will survive as to MSP only.

### 2.    Remaining Claims

#### a.    Race Discrimination under Title VII

Gordon and Jones raise a claim for race discrimination under Title VII (Count One). As the Court has explained, the claim may proceed against only MSP. At bottom, the Court will dismiss the claim.

Again, Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Chapman, 2023 WL 5053545, at *6 (D.Md. Aug. 8, 2023). "While a Plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under Twombly and Iqbal." Swaso v. Onslow Cnty. Bd. of Educ., 698 F.App'x 745, 747–48 (4th Cir. 2017). Nonetheless, "reference to the elements of a Title VII claim is helpful to gauge the sufficiency of the allegations." Gaines v. Balt. Police Dep't, No. ELH-21-1211, 2023 WL 2185779, at *11 (D.Md. Feb. 22, 2023) (pending publication). For a race discrimination claim under Title VII, a plaintiff must allege "(1) membership in a protected class; (2) satisfactory job performance;

(3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Id. (quoting Goode v. Cent. Va. Legal Aid Soc., Inc., 807 F.3d 619, 626 (4th Cir. 2015)).

MSP argues, among other things, that Gordon and Jones' claims must fail because they do not allege specific facts regarding any similarly situated employees outside the protected class. (See Mem. L. Supp. MSP Mot. Dismiss Alt. Mot. Summ. J. at 21, ECF No. 25-2). MSP is correct. In a race discrimination case such as this, "an inference of race . . . discrimination could be based on a comparison to the treatment of similarly situated co-workers of different races . . . , if those colleagues were treated more favorably under similar circumstances." Booth v. Cnty. Exec., 186 F.Supp.3d 479, 486 (D.Md. 2016). Here, Plaintiffs allege—without offering any details—that "Plaintiffs began to notice that white Task Force members who had the same job title as Plaintiffs and the same or similar job duties received more favorable treatment." (Am. Compl. ¶ 46). But Plaintiffs do not offer the identities of any of these white Task Force members, their experience level, or any particular skills. Moreover, Plaintiffs do not offer any details as to the "desirable job assignment opportunities" that these unnamed white Task Force members received. (Id. ¶ 51). Without facts supporting these allegations, Plaintiffs offer little more than conclusory statements tracking the elements of the pleading requirements. This is insufficient to state a claim under Iqbal and Twombly, and the Court will dismiss the claim.

Accordingly, the Court will dismiss Count One, race discrimination, as to MSP. The claim has already been dismissed as to Heath and Oros.

### b.    Hostile Work Environment under Title VII and § 1981

Gordon and Jones raise a claim for hostile work environment under Title VII and § 1981. As the Court has explained, the Title VII claim may proceed against only MSP. The § 1981 claim may proceed against only Oros and Heath in their individual capacities. At bottom, the Court will deny the Motions as to Counts Three and Five at this early stage.

Title VII provides a cause of action for hostile work environment where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Mustafa v. Iancu, 313 F.Supp.3d 684, 695 (E.D.Va. 2018) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race[,] (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)). In determining whether discriminatory conduct is pervasive enough to render the work environment objectively abusive, courts look to "all the circumstances[,] [which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23. "[N]o single factor is required." <u>Id.</u> "In order to support a claim for hostile work environment, the alleged conduct must not only 'create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive.'" <u>Nicole v. Grafton Sch., Inc.</u>, 181 F.Supp.2d 475, 482 (D.Md. 2002) (quoting <u>Spriggs v. Diamond Auto Glass II</u>, 242 F.3d 179, 184 (4th Cir. 2001)).

As to whether conduct is imputable to the employer, it is important to note that "the existence of unwelcome conduct" based on race "is not on its own enough to hold an employer liable." <u>See</u> <u>Bazemore v. Best Buy</u>, 957 F.3d 195, 201 (4th Cir. 2020). The Fourth Circuit has stated that its "analysis of the imputability requirement is informed by the status of the alleged harasser." <u>Id.</u> If the harasser is a co-worker, then a plaintiff must show that the employer "knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it." <u>Id.</u> If, on the other hand, the harasser is a supervisor as Plaintiffs allege here, imputability may be more direct if the harasser "is empowered by the employer to take tangible employment actions against the [employee]." <u>Hammoud v. Jimmy's Seafood, Inc.</u>, 618 F.Supp.3d 219, 236 (D.Md. 2022) (quoting <u>Vance v. Ball State Univ.</u>, 570 U.S. 421, 424 (2013)).

Here, Gordon and Jones' hostile work environment claim is based on the text message Oros sent to their work group chat with an image of George Floyd overlaid by another image of a nude African American man with "exposed and enlarged genitals sitting on George Floyd's head and neck area," as well as general allegations that they were excluded from other text chains. (Am. Compl. ¶¶ 47–56, 67). The description of this

message—although to be clear, the Court has not reviewed the message itself—is certainly abhorrent and racially offensive. Turning to the other factors, Gordon and Jones do not allege that this behavior was repeated, and it appears from the Amended Complaint that it was an isolated incident. Moreover, Gordon and Jones do not allege that they were physically threatened or intimidated, although they do indicate that they were psychologically affected. Finally, assuming that Oros is a supervisor, which the Court has done for the purposes of these Motions, his status is certainly an aggravating factor. See Boyer-Liberto, 786 F.3d at 278 (citing Rodgers v. W.- S. Life Ins. Co., 12 F.3d 668, 675 (7th 1993) ("[T]he status of the harasser may be a significant factor . . . [because] 'a supervisor's use of a racial epithet impacts the work environment far more severely than use by co-equals.'").

Gordon and Jones have alleged sufficient facts regarding the text message to survive dismissal. Particularly notable to the Court is Oros' potential position as a supervisor over Gordon and Jones, which the Court and the parties assumed here, the context within which a derogatory message about George Floyd may have been received by the only Black police officers on the Task Force, and the potential significance of superimposing a nude Black man on Floyd's neck in place of the non-Black officers present during Floyd's death. Still, the Court cautions that the plausibility of Gordon and Jones' claims falls in large part on Oros' status as either a supervisor or co-worker. Such a determination on a more fulsome record will meaningfully affect both the severe or pervasive element and the imputability element of the hostile work environment test. In other words, although Plaintiffs have narrowly charted the plausibility of their hostile work environment claim for purposes of

12(b)(6), the Court's ruling should not be read as a conclusive determination on the questions or severity or imputability. The Court will deny the Motions as to Counts Three and Five.

### c. Race Discrimination under 42 U.S.C. §§ 1983 and 1981

Next, Gordon and Oros allege a claim of race discrimination under 42 U.S.C. § 1983 and § 1981 against Heath and Oros in their individual capacities only. (Counts Two and Four). At bottom, the Court will dismiss the claims.[5]

Section 1981 provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." § 1981(a). Further, § 1981 "prohibits discrimination in employment on the basis of race." Gaines, 2023 WL 2185779, at *23. To state a claim under § 1981, Gordon and Jones must allege: "1) membership in a protected class; 2) satisfactory job performance; 3) adverse employment action; and 4) different treatment from similarly situated employees outside the protected class." Id. at *24 (quoting Giles v. Nat'l Railroad Passenger Corp, 59 F.4th 696, 703 (4th Cir. 2023)).

"Section 1983 establishes a cause of action against any 'person' who, acting under color of state law, 'subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Weathersbee v.

---

[5] Gordon and Jones allege their race discrimination claims in separate Counts—they raise their § 1983 claim in Count Two and raise a separate claim under § 1981 in Count Four. As the analysis is substantively similar under §§ 1981 and 1983, the Court will address them together.

Balt. City Fire Dep't, 970 F.Supp.2d 418, 429 (D.Md. 2013) (quoting § 1983). "A public employee may bring a claim of employment discrimination under § 1983 and the Equal Protection Clause." Id. "To state an equal protection claim, a plaintiff must allege facts establishing that she has been treated differently from others with whom she is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Windsor v. Bd. of Educ. of Prince George's Cnty., No. TDC-14-2287, 2016 WL 4939294, at *11 (D.Md. Sept. 13, 2016).

Section 1983 does not provide for respondeat superior liability. Weathersbee, 970 F.Supp.2d at 429. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Gaines, 2023 WL 2185779, at *24. "[A] plaintiff suing a state or municipal actor 'has no cause of action based on § 1981 independent of § 1983." Id.

Gordon and Jones' §§ 1981 and 1983 claims are redundant to their Title VII racial discrimination claims, and Plaintiffs who do not prevail under Title VII cannot prevail under §§ 1981 or 1983. See Settle v. Balt. Cnty., 34 F.Supp.2d 929, 995 (D.Md. 1999) ("Plaintiff's . . . failure to establish a prima facie case under Title VII . . . is fatal to his claims under §§ 1981 [and] 1983 . . . ." (quoting Causey v. Balog, 929 F.Supp. 900, 913 (D.Md. 1996))). As explained above, Gordon and Jones have not pleaded facts sufficient to show that Heath or Oros treated them differently than other similarly situated employees on the basis of race—indeed, they provide only sweeping, conclusory statements that other, unidentified task force members had similar training, skills, and experience and that those

task force members received unspecified promotions or other employment opportunities. Accordingly, Gordon and Jones' §§ 1981 and 1983 claims against Heath and Oros in their individual capacities (Counts Two and Four) must be dismissed.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motions in part and deny the Motions in part. MSP is directed to file an Answer as to the remaining count against it (Count Three) according to the Federal Rules of Civil Procedure and the Local Rules of this Court. Oros and Heath are directed to file an Answer to the remaining count against them in their individual capacities (Count Five) according to the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 20th day of September, 2023.

_____/s/_____
George L. Russell, III
United States District Judge